IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PAMELA D. CLONTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:16CV972 |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Pamela Clontz ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on May 30, 2013, alleging a disability onset date of May 30, 2012. (Tr. at 14, 137-43.)[2] Her claim was denied initially (Tr. at 54-63, 75-78), and that determination was upheld on reconsideration (Tr. at 64-74). Thereafter,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #7].

Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 89-90.) Plaintiff attended the subsequent hearing on December 11, 2015, along with her attorney and an impartial vocational expert. (Tr. at 14.) At the hearing, Plaintiff amended her alleged onset date to February 28, 2012. (Tr. at 14, 29.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 21.) On May 23, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---
[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since February 28, 2012, her amended alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from one severe impairment: "chronic pain status post meningitis." (Tr. at 16.) The ALJ found at step three that this impairment failed to meet or equal a disability listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with additional postural, environmental, and mental limitations. (Tr. at 17.) Based on this determination and the testimony of a vocational expert, the ALJ

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

determined at step four of the analysis that Plaintiff was unable to perform any of her past relevant work. (Tr. at 20.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 20-21.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 21.)

Plaintiff now contends that, in making his RFC assessment, the ALJ (1) failed to perform a function-by-function assessment of Plaintiff's work-related abilities in accordance with the Fourth Circuit's recent decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), (2) failed to properly assess Plaintiff's credibility, and (3) failed to properly weigh the third party function report submitted by Plaintiff's husband. Plaintiff further argues that the Appeals Council erred by failing to remand the case to the ALJ in light of "new and material evidence" from Plaintiff's treating physician, Dr. Joel Edwards. (Pl.'s Br. [Doc. #12] at 3.)

A. New and Material Evidence Submitted to Appeals Council

On March 24, 2016, two months after the ALJ issued his January 29, 2016 decision, Plaintiff submitted to the Appeals Council an opinion letter authored by her long-time treating physician, Dr. Joel Edwards. Plaintiff contends that the Appeals Council erred in failing to grant review based on this new evidence. In deciding whether to grant review, the Appeals Council must consider additional evidence submitted with the request if "the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991) (en banc); see also 20 C.F.R. § 404.970(b).

6

Here, the Appeals Council determined that Plaintiff's case had been decided through her date last insured of June 30, 2013, and that Dr. Edwards' letter "is about a later time" and therefore did "not affect the decision about whether [Plaintiff was] disabled" as of her date last insured. (Tr. at 2.) However, Plaintiff contends that Dr. Edwards' letter relates to the period prior to the ALJ decision and prior to the date last insured. Plaintiff notes that Dr. Edwards was her primary care physician for over 30 years and saw her numerous times following her hospitalization for meningitis in February 2012. Dr. Edwards' letter is addressed to Plaintiff's counsel and states:

> Thank you for representing Pamela L. Clontz in her claim for Social Security disability benefits. Based upon what should have been available information at the time, I am astounded that her claim was denied by an Administrative Law Judge on January 29, 2016.
>
> Ms. Clontz has been my patient for many years. Until her bout with viral meningitis for which she was hospitalized on February 29, 2012, she was a vigorous, hard working woman. Since that time, she has been plagued by multiple medical issues including ataxia, muscle weakness, generalized pain, suspected rheumatoid arthritis, severe headaches, weakness[,] and chronic pain. The precise correlation with the viral meningitis is hard to establish. However, the temporal relationship between the viral meningitis and her four year odyssey with progressive worsening of her overall ability to function in a productive manner is hard to dismiss.
>     . . .
>
> In [Plaintiff's] current situation, lifting more than 20 pounds is extremely difficult. Doing so with any frequency would be impossible for her based upon weakness and pain. Her ability to stand for more than 15 minutes at a time is very limited for the same reasons.
>
> In summary, I have witnessed this lady progress from a vigorous, highly productive individual to a state where she has difficulty even preparing a single meal, much less doing her housework without prolonged periods of rest between intervals of light work no more than 10 minutes. She has been diligent in seeking help from multiple specialists, none of whom have been able to explain or help reverse her progressive disability.

> She would like nothing better than to be able to return to her previous state of good health and personal productivity. However, this has not proven possible now for over 4 years despite multiple medical consultations.
>
> Rarely in my career have I written a letter in such strong support of a patient's disability. Please call if you need any further information from me or my staff.

(Tr. at 7.)

The Commissioner contends that this letter reflects only Plaintiff's lifting and standing limitations as of March, 24, 2016, the date of the letter. However, the letter points to Plaintiff's February 2012 meningitis diagnosis as the starting point for her declining health, and states that "[u]ntil her bout with viral meningitis for which she was hospitalized on February 29, 2012, she was a vigorous, hard working woman. Since that time, she has been plagued by multiple medical issues including ataxia, muscle weakness, generalized pain, suspected rheumatoid arthritis, severe headaches, weakness and chronic pain." Thus, the letter itself directly speaks to Plaintiff's condition since February 2012, and by its terms includes the period prior to the date of the ALJ's decision. Notably, the letter further states that Dr. Edwards had "witnessed this lady progress from a vigorous, highly productive individual to a state where she has difficulty even preparing a single meal, much less doing her housework without prolonged periods of rest between intervals of light work no more than 10 minutes." This language is also reflected in Dr. Edwards' treatment notes from the time period prior to the date last insured, in which Dr. Edwards noted on March 14, 2013 that "she has gone from a vigorous working woman to actually having difficulty getting out of the house" (Tr. at 333) and on December 12, 2012 that "[b]asically all year, she has been out of work due to her generalized muscle aches and pains" and feeling like she "ha[s] the flu" (Tr. at 341). Thus,

contrary to the Appeals Council determination, the letter does not solely relate to a "later time."

The Commissioner also contends that the letter is not "new" evidence under sentence six of 42 U.S.C. § 405(g) because Plaintiff failed to show good cause for not obtaining the letter earlier. However, sentence six of 42 U.S.C. § 405(g) provides for remand <u>by the court</u> "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." In this case, Plaintiff is not seeking a remand under sentence six of 42 U.S.C. § 405(g) and is not attempting to present new evidence to the Court that was not presented in the administrative process. <u>See</u> <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 98 (1991) (describing remands under sentence six of 42 U.S.C. § 405(g)). Instead, Plaintiff did present her evidence to the Appeals Council as part of the administrative process, and is now challenging the decision of the Appeals Council not to consider her evidence. Thus, it is the Appeals Council's determination that is before this Court in the present appeal. Notably, the Appeals Council did not reject Plaintiff's evidence based on a failure to show good cause for not obtaining the letter sooner, but instead because the letter related to a "later time." <u>See also</u> 20 C.F.R. § 404.970(b) (2016); <u>Wilkins v. Sec'y, Dep't of Health & Human Servs.</u>, 953 F.2d at 95–96 & n. 3 ("There is no requirement that a claimant show good cause when seeking to present new evidence before the Appeals Council.").[5]

---

[5] The Court notes that, effective January 17, 2017, the Agency amended 20 C.F.R. § 404.970(b) to also require, *inter alia*, that a claimant show good cause for not submitting the additional evidence to the ALJ pursuant to 20 C.F.R. § 404.395. However, in the present case, the ALJ issued his opinion on January 26, 2016, and the Appeals Council denied Plaintiff's request for review on May 23, 2016. Consequently, the Court will review the Appeals Council's decision under the version of the regulation in effect at the time that it rendered its decision and based on the reasons stated in that decision.

Finally, the Commissioner contends that the letter from Dr. Edwards is not material, because it did not relate to the time period prior to June 30, 2013, the date last insured. However, as discussed above, the letter by its own terms clearly relates to the time period prior to the date last insured. In addition, the Fourth Circuit has specifically addressed the consideration of retrospective evidence created after the date last insured:

> Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI. Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir.1987). In Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir.1969), we held that an SSA examiner improperly failed to give retrospective consideration to evidence created between six and seven years after the claimant's DLI, because the evidence could be "reflective of a possible earlier and progressive degeneration." The possibility of such a linkage, and thus the appropriateness of retrospective consideration of medical evidence, may be enhanced further by lay observations of a claimant's condition during the relevant time period. Id.; see also Cox v. Heckler, 770 F.2d 411 (4th Cir.1985) (remanding for consideration of post-hearing evidence given claimant's progressively deteriorating lung condition).
>
> Our more recent decision in Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005), is further instructive of the principles we articulated in Moore. In Johnson, after the SSA administrative hearing had concluded, the claimant's treating physician submitted a new assessment identifying additional impairments that were not linked in any manner to the claimant's condition before her DLI. Id. at 656 & n. 8. Because there was no evidence that these impairments existed before the claimant's DLI, we held that the evidence was not relevant, and that the ALJ was not required to give the new assessment retrospective consideration. Id. at 655–56. Thus, our holding in Johnson reinforces the principle applied in Moore that post–DLI medical evidence generally is admissible in an SSA disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre–DLI condition. See Moore, 418 F.2d at 1226.
>
> In Moore, we recognized that evidence created after a claimant's DLI, which permits an inference of linkage between the claimant's post–DLI state of health and her pre–DLI condition, could be the "most cogent proof" of a claimant's pre–DLI disability. Id. Accordingly, under our decisions in Moore and Johnson, retrospective consideration of evidence is appropriate when "the record is not so persuasive as to rule out any linkage" of the final condition of the claimant with his earlier symptoms. Id.

Bird v. Commissioner, 699 F.3d 337, 340-41 (4th Cir. 2012). In the present case, Dr. Edwards' letter is within the scope of retrospective evidence properly considered, since "the record is not so persuasive as to rule out any linkage" of the opinions in Dr. Edwards' letter and Plaintiff's earlier symptoms.[6]

Moreover, the opinion from Plaintiff's long-time treating physician is material in this case, given that the primary basis for the ALJ's determination appears to be the opinion of the non-examining state agency physician. In this regard, the Court notes that the ALJ's decision includes a brief summary of portions of the medical record, and then without explanation concludes that the "objective medical evidence of record supports a finding that [Plaintiff] can perform a range of medium work." (Tr. at 19.) The ALJ then states that he gave significant weight to the opinion of the state agency medical consultant Dr. Jimenez-Medina. (Tr. at 19.) Thus, the apparent basis for the ALJ's conclusion is the analysis of Dr. Jimenez-Medina. However, Dr. Edwards is Plaintiff's treating physician and provides a contrary view that instead confirms Plaintiff's testimony and her husband's lay observations.

In addition, Dr. Edwards' letter also confirms and further details his view of Plaintiff's subjective complaints reflected in his treatment records from March 2012 through the date last insured. This is particularly important because, as noted by Plaintiff, the ALJ's decision itself fails to include any discussion of those treatment records. For example, the ALJ's decision does not include any mention of Dr. Edwards' treatment of Plaintiff from the

---

[6] To the extent there may be a separate question as to exactly when Plaintiff's condition became disabling, that would be a separate issue that would require further consideration and determination, in consultation with a medical advisor as necessary. See Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995); see also Bird, 699 F.3d at 345; SSR 83-20, 1983 WL 31249 (1983).

11

February 2012 onset date through April 2013. During that time, Dr. Edwards' treatment notes reflect that Plaintiff saw Dr. Edwards in March 2012 for a sporadic headache, neck pain, and fatigue that she had been experiencing since she was released from her hospitalization for viral meningitis a few weeks earlier (Tr. at 355); treatment in July 2012 for headaches, "all joints and muscles hurt since having meningitis" and "constantly fatigued, no energy, her feet and hands tend to swell, her joints hurt, muscles hurt" dating "most of her symptoms back to in the winter when she had meningitis" (Tr. at 352); in August 2012 when her arthralgias and myalgias were "[n]o better, no worse" (Tr. at 351); in November 2012 for "perceived decrease in coordination" and "a good bit of pain in the neck and back of her head" and "[d]iscomfort in her arms when she reaches up and behind" (Tr. at 346); in December 2012 for "chronic muscle and joint pain," headaches, and feeling like she has the flu, with a notation that "[b]asically all year, she has been out of work due to her generalized muscles aches and pains" (Tr. at 341); and in March 2013 for "chronic joint pain" since her meningitis that has left her "having difficulty getting out of the house" (Tr. at 333-35). None of these records were addressed or even mentioned in the ALJ's decision. The ALJ also failed to include any mention of Dr. Edwards' treatment notes from 2014. Those records reflect "pain, some weakness, fatigue [and] frequent falls" in March 2014 (Tr. at 507); symptoms that "remained unchanged or are gradually worsening with pain, weakness and instability" also in March 2014 (Tr. at 567); and a notation in November 2014 that "it has been nearly 3 years since she had meningitis and has not really been able to go back to work since that time" (Tr. at 684). The records from the Nurse Practitioner in Dr. Edwards' office, also not mentioned by the ALJ, reflect that in March 2015, Plaintiff was "Positive for back pain (from arthritis – no change)" and "Positive

for dizziness and headaches" (Tr. at 1079); in April 2015 was positive for back pain, joint pain, and muscle cramps in legs and hands (Tr. at 1213); in July 2015 was positive for headaches, arthralgias, back pain and neck pain (Tr. at 1583); and in November 2015 was positive for dizziness and headaches and arthralgias (Tr. at 1902). Thus, the treatment records from Dr. Edwards office reflect continued symptoms from March 2012 through November 2015 but were not addressed in the ALJ's decision.

Moreover, the Court also notes that the records that were addressed by the ALJ were only cited in part and in some cases were inaccurately cited. For example, the ALJ noted that Plaintiff's January 2013 hematology workup was negative for underlying bone marrow disease (Tr. at 18), but the ALJ did not note her secondary erythrocytosis and leukocytosis reflected in those labs (Tr. at 303, 306). Similarly, the ALJ noted that Plaintiff's brain MRI in April 2013 was normal (Tr. at 18), but did not note that the MRI showed "paranasal sinus disease with involvement of the right frontal, ethmoid and maxillary sinuses" which "usually indicates obstruction at the level of the middle meatus of the nose" (Tr. at 318).[7] The ALJ also noted that Plaintiff noted improvement when she was "compliant" with taking gabapentin that had been prescribed in April 2013, and that she was doing "better" on the gabapentin in May 2013, but the ALJ failed to note that the side effects were sufficiently severe that she was weaned

---

[7] At step one of the sequential evaluation process, the ALJ noted that Plaintiff had been diagnosed with sinus disease for which she underwent surgical intervention in October 2015, and also noted that prior to surgery this condition had been associated with headaches and facial pain. (Tr. at 17.) The ALJ concluded that this condition was "not a severe, medically determinable impairment existing at the time of the claimant's alleged onset date" because "this condition was not diagnosed until three years after her amended alleged onset date of disability." However, the ALJ did not address the findings in the April 2013 MRI, which was prior to the date last insured.

13

off the gabapentin two months later in July 2013 (Tr. at 361, 369, 481).[8] Most strikingly, the ALJ cited to a record from May 2013 and stated that: "Of note, her RA factor was evaluated, but 'clearly not diagnostic of rheumatoid arthritis.'" (Tr. at 19.) However, the record actually says that Plaintiff's RA factor was "elevated" not "evaluated." (Tr. at 324). Moreover, based on a review of the records, it appears that Plaintiff's RA factor was positive beginning in July 2012 and remained elevated, her records repeatedly reflect a diagnosis of "Rheumatoid factor positive," and within a few months she was diagnosed with Rheumatoid arthritis. (Tr. 281, 292, 328, 341, 507, 538 ("Positive RF with new polyarthralgias consistent with probable RA" in March 2014), 540, 543, 567, 604, 605 ("Assessment and plan: Rheumatoid arthritis. High risk prescription."), 622, 648, 684). The ALJ did not address those diagnoses at all.

Similar issues persist in the summary of the records even after the date last insured. For example, the ALJ states that in November 2014, Plaintiff started oxycontin for her pain, which "provided adequate pain relief" (Tr. at 19). However, the ALJ did not note that Plaintiff stopped the oxycontin one month later due to side effects. (Tr. at 761.) The ALJ also noted that in July, August and September 2015, Plaintiff was increasing her workload and working on aerobic and muscle strengthening exercises. However, those records reflect that Plaintiff required a cane to walk, had physical limitations due to balance issues and pain since her meningitis, and that she was walking on a treadmill at no incline at a pace of 1 or 2 miles per hour and then sitting for chair aerobics or lifting 2 or 3 pound weights at a hospital

---

[8] The ALJ also failed to note that those treatment records from May 2013 also reflect that on physical exam "SHE WALKS WITH A SLIGHT LIMP TO THE RIGHT. WALKS WITH SHORT STEPS AND SLOW. CAN SQUAT ONLY TO ABOUT 30 DEGREES OFF VERTICAL. HEEL STAND VERY UNSTEADY" (Tr. at 326 (all caps in original)).

rehabilitation facility (Tr. at 1308, 1383, 1396, 1405, 1411, 1451, 1457, 1515, 1534, 1629, 1649, 1656).

With respect to these issues, the Fourth Circuit has recently noted that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017). In this case, the ALJ's selective citation and failure to address large portions of the record raise questions with respect to whether the ALJ's determination is supported by substantial evidence. Similarly, the lack of any analysis of these issues raises questions as to whether a sufficient explanation was provided to even allow for judicial review. See Mascio, 780 F.3d at 636 (holding that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." (internal quotation omitted)); Lewis, 858 F.3d at 870 ("[T]he ALJ failed to adequately explain the reasons for denying Lewis benefits given her extensive medical history, thus precluding our ability to undertake the 'meaningful review' with which we are tasked on appeal.").

In the circumstances, the Court concludes that Dr. Edwards' letter is material to the disability determination and should be considered, along with a full review of the record with sufficient analysis to allow for meaningful review. Therefore, the Court concludes that this matter should be remanded to the ALJ for further proceedings and consideration of all of the relevant evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #13] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #11] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 13th day of July, 2017.

/s/ Joi Elizabeth Peake
United States Magistrate Judge